(No. 31305.

Owen Gaffney, Appellee, *vs.* Robert E. Harmon, Appellant.

*Opinion filed January 18, 1950—Rehearing denied March 20, 1950.*

HUGH GREEN, of Jacksonville, for appellant.

EDWARD J. FLYNN, and HARRY G. STORY, both of Jacksonville, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellee, Owen Gaffney, filed suit in the circuit court of Morgan County against Robert E. Harmon, an attorney at law, to have a trust declared in certain real estate that had been sold on execution under a judgment against appellee and redeemed by appellant, and title taken in the name of the latter. The court declared such a trust to exist and ordered appellant to convey the land to appellee by a day fixed in the decree, and to make an accounting of the rents and profits arising out of the land. A freehold is involved and, hence, there is a direct appeal to this court.

In 1937 appellee was the owner of a life estate in eighty acres of land in Morgan County, the whole fee-simple interest in which was then of the fair value of from $175 to $200 per acre. He was about fifty-four years of age at that time, and had very little education. He became in-

debted, and a judgment was obtained against him in the circuit court, which amounted with interest and costs to the sum of $177.76, and his interest in said land was sold by the sheriff upon execution. His twelve months of redemption expired, but within the fifteen months' period he consulted appellant, who was an attorney at law. He was indebted to the latter in some small amounts for previous services, and was advised of the rights of a judgment creditor to redeem from the sale within fifteen months, and at the suggestion of appellant, or of another lawyer in the office with Harmon at the time, appellee was told that if he would execute a judgment note in favor of appellant a judgment could be obtained and the land redeemed from the first sale. After some conversation a note was made by appellee, with a warrant of attorney attached, in the sum of $100 and delivered to appellant, who promptly placed the same in judgment. There is some evidence to the effect that at the time the note was delivered appellant insisted that appellee refrain in the future from the use of intoxicating liquors. The circumstances, however, tend to show that appellant expected to be reimbursed for his advances, and upon such payment he would reconvey the land to appellee.

It is admitted that in the past appellant had represented appellee as an attorney at law, but that the latter had not paid appellant for all of the services rendered. Appellant redeemed the land at a total cost of $217.41, and in October, 1938, obtained a deed from the sheriff to the interests that appellee had in said land. Appellant proceeded to rent the land and to collect the income therefrom, made some improvements upon the premises, and, about a little over a year after he had obtained the deed, and at a time when he had certainly received at least $240 in rents, made out a deed from himself to appellee, as grantee, but apparently never signed it or executed the same. He testified that he told appellee to come and get the deed, but the appellee

never did. He continued in the possession until the time of the bringing of the suit, and in the meantime the value of the land had greatly increased, and the rentals also increased accordingly, although they are not disclosed after the year 1940. In the meantime, the property had been sold for taxes and a tax deed issued to the tax purchaser. Appellant purchased the interest of said tax purchaser and received a deed from him for the said land, including the whole interest in the same. The evidence also shows quite clearly that the seller of the tax title received money that could have come from the rentals collected off of the land, because the amount paid is included in the operating expenses of the farm for that year.

It is not denied by appellant that he had in the past been attorney for appellee, and, in justifying his refusal to reconvey the property, claims that he had not been paid his attorney fees which he had earned in procuring the redemption. He also concedes that he told appellee that the land could be redeemed by him, but upon a condition that appellee would refrain from drinking, and that the latter did not cease the use of intoxicating liquors, and that thereupon appellant relinquished all dealings with appellee, but he makes no pretense that he suffered any financial or other loss by failure of appellee's alleged promise to cease drinking liquors, independent of the expenditures that he had made for redemption.

The ultimate facts growing out of the transactions were adequately set forth in the complaint and answered by appellant. As suggested above, the court found in favor of appellee, and to reverse such decree the appellant contends: (1) that the court erred in not finding that a fiduciary relationship of attorney and client, or the influence arising from the same, had terminated after appellant advised appellee he would have nothing further to do with him; (2) that the court erred in finding that the redemption of the real estate was for the benefit of appellee and that the

latter was not estopped by *laches* or any statute of limitations; (3) that the court erred in holding against appellant's claim that he had acquired title from the tax purchaser; and (4) that the court erred in holding that the appellant was a trustee for the benefit of appellee.

The facts as pointed out above, and which are substantially conceded by both appellant and appellee, require only the application of well-settled principles pertaining to the fiduciary relationship existing between an attorney and client, not only with respect to the burden of proof, but also as to the duty owed by the attorney to his client. In the first place a fiduciary relationship exists as a matter of law between attorney and client, which requires all transactions between them, growing out of such relationship, to be subject to the closest scrutiny. (*People ex rel. Chicago Bar Ass'n* v. *Charone*, 288 Ill. 220.) In *Oil, Inc.* v. *Martin*, 381 Ill. 11, where a similar question was involved, we held that where the relation of attorney and client exists, and the attorney receives anything of benefit thereby contrary to the interests of his client, either by purchase from the client or by acquiring interests adverse to his client, the burden is upon the attorney to show the fairness, adequacy and equity of such transaction. Many cases cited in that opinion support this proposition.

It is admitted in this case that appellee had formerly been a client of appellant; that he was still owing him some small amount on fees; that he went to his office and consulted with him with reference to his right or power to have redemption made after his period to do so had expired. His interests had not entirely ceased in the property because of his failure to redeem in twelve months, (*Hruby* v. *Steinman*, 374 Ill. 465; *Harper* v. *Sallee*, 372 Ill, 199,) and he was advised by appellant how redemption could be accomplished, after which appellee gave a note to appellant, which was admittedly in excess of the amount owing on previous fees.

It seems rather clear that the original arrangement contemplated that the appellant should be repaid the money it had cost him to redeem, and he certainly would be entitled to some additional fees, and this seems to be the reason the note was executed in a sum tacitly admitted by the appellant to be in excess of the amount presently owed and the reason he prepared a deed after he had collected more than sufficient money to pay the amount he was then out of hand.

It seems to be the theory of appellant that, although the relationship of attorney and client existed at the time he agreed to make the redemption, he had the right at any time in the future to terminate that relationship and profit from the redemption. In *Oil, Inc.* v. *Martin,* 381 Ill. 11, we said: "The rule is settled that a lawyer cannot purchase or acquire the subject matter of litigation, or any interest therein, and hold the title adversely to the client." And recently, in the case of *Vrooman* v. *Hawbaker,* 387 Ill. 428, we reaffirmed what we said in the *Martin case,* saying: "Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by acquiring interests contrary to the interests of his client, the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client."

It is, however, contended that a part of the consideration for the making of the advance of money to redeem the property was a promise upon the part of appellee to refrain from the use of intoxicating liquors, and that this was the condition upon which the money was advanced. Aside from the question that the burden is upon the appellant to prove such a condition, which is denied by appellee, no authorities have been cited to show that such would constitute a valid consideration to support appellant's claim

to a forfeit of the rights of the appellee in the real estate in question. There is no proof whatever that appellant would be financially or in any way injured or damaged by the failure of appellee to keep such a promise or agreement. It constitutes no more than a moral obligation unenforcible as a contract, unless it results in financial loss or injury to the promisee. Citation of authority on this proposition is unnecessary for it is so laid down in the hornbooks as a fundamental principle of contract law. Am. Juris., vol. 12, p, 590; Benjamin on Contracts, Comb. Ed., p. 47; *Hart* v. *Strong,* 183 Ill. 349.

It is next contended that appellant was acting lawfully in acquiring the tax title of a third party in his own name, and thus acquired a perfect title as against appellee. It does not appear that appellant ever invested any money from any source not derived from rentals from this farm in making such tax redemption. The title he obtained through the sheriff's deed was a life estate. The duty is upon the life tenant to pay the taxes. If appellant held it as trustee for appellee, and the taxes were paid from proceeds of the land, what he acquired was also for the benefit of the *cestui que trust.* Under such conditions we have held that a tax title so acquired is not one that ripens into a title that can be sustained by the trustee. In *Ross* v. *Payson,* 160 Ill. 349, this precise question was before the court, and we held there that even though such purchaser was in possession and had color of title, and had paid taxes, his color of title was not made in *good faith,* which is necessary to establish a title under the seven-year statute of limitations. Ill. Rev. Stat. 1947, chap. 83, par. 7.

Appellant also claims that the plaintiff should not recover because of *laches.* This defense cannot be sustained. The evidence shows that from time to time appellee was paid small sums of money by appellant, the last amount being in the neighborhood of $20, which he was under no obligation to pay unless he recognized his liability to ap-

pellee. Moreover, the principle is not applicable in the present case. In the *Payson case,* in calling attention to the fact that there is an exception to the rule that ordinarily an action not brought within the period of limitation is barred, and in discussing the rule that applies, as in equity, we declared the question becomes one of fact in each particular case, and in applying the rule, as in a case where a fiduciary relationship between an attorney and client was breached, the court adopted the holding of *Stiger* v. *Bent,* 111 Ill. 328, wherein we said: "A court of equity applies the doctrine of *laches* in denial of relief prayed, where the statutory period of limitations has not expired, only where, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled, will, presumptively, be inequitable and unjust, because of the delay, to the defendants." In the recent case of *Rogers* v. *Barton,* 386 Ill. 244, we reaffirmed that principle, saying: "In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* will be considered."

During all of the time the appellant has held this property the rents have been adequate to reimburse him and pay him a reasonable fee for his services, and to take care of the tax obligations, to which he succeeded as the owner of appellee's title. There are no circumstances pointed out in the case by which he would be injured other than that he will not retain the fruits of the transaction, which have been acquired by a grossly inadequate consideration. In a case where an attorney acquired a title adverse to his client, Justice Schofield says: "Such a practice would open a door to endless wrongs and villanies, and bring great and just reproach upon the profession." *Gibbons* v. *Hoag,* 95 Ill. 45.

While we have not discussed all of the points raised or argued in the respective briefs, we have given them serious consideration and find they are without merit. The decree of the court does not foreclose appellant from being reimbursed for his expenditures and a reasonable compensation for his services after it orders an accounting, but the decree of the court in holding that appellant held the title to the land in question in trust for appellee was just and proper, and the decree is accordingly affirmed.

*Decree affirmed.*