JEFCO LABORATORIES, INC., Plaintiff-Appellant, v. LAWRENCE F. CARROO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—0178

Opinion filed September 24, 1985.

Howard J. Siegel and Weston W. Hanscom, both of Keck, Mahin & Cate, of Chicago, for appellant.

Terrance J. Coughlin, of Chicago, for appellee Lawrence F. Carroo.

Lonny Ben Ogus, of Chicago, for appellee Michael J. Gluck.

JUSTICE BILANDIC delivered the opinion of the court:

Jefco Laboratories, Inc. (hereinafter Jefco or plaintiff), sought a temporary restraining order (TRO) and a preliminary injunction against defendants Lawrence F. Carroo and Michael J. Gluck for their alleged breach of a restrictive covenant contained in their employment contracts. The trial court issued a TRO against Carroo at an *ex parte* hearing. After an evidentiary hearing, the court dissolved the TRO against Carroo and refused to issue a preliminary injunction against either defendant. Jefco appeals the court's interlocutory order pursuant to Supreme Court Rule 307(a) (91 Ill. 2d R. 307(a)). The sole issue is whether the court abused its discretion in dissolving the TRO and refusing to issue the preliminary injunction.

Jefco makes and distributes cleaning chemicals and disinfectants in the Chicago, northern Indiana, and southern Wisconsin areas. In early 1982, defendant Carroo was recruited to work for Jefco by one of Jefco's salesmen, Gene Infelice, who received a finder's fee for recruiting Carroo. Until then, Carroo had worked for 25 years for a Jefco competitor, Madison Chemicals (now Kem Manufacturing). Carroo began working for Jefco in April 1982, and defendant Gluck, who had also worked for Madison Chemicals, was recruited and hired by Jefco later that same month. As Alex C. George, Jefco's vice-president of sales, testified, "We encourage our sales force to be on the look out for other salesmen."

While employed at Madison Chemicals, both defendants signed restrictive covenants, and the record shows that Jefco was well aware of this. In June 1982, about two months after defendants were hired by Jefco, both Jefco and defendants were sued by the successor to Madison Chemicals, who alleged that defendants had breached their restrictive covenants and that Jefco had induced them to do so. Jefco offered to, and did pay, for the defense, and it engaged its attorney, Allen Gernstein, as counsel. Gernstein had been Jefco's attorney for eight or nine years, was a member of Jefco's board, and later drafted the covenant at issue here.

In November 1982, five months after the suit against Jefco and defendants was filed, Jefco submitted a restrictive covenant to Carroo and Gluck, under an express or implied threat of withdrawal of its financial support of their defense. Defendants were thus faced with the possibility of paying for their own legal expenses if they did not sign. Bargaining from a position of relative weakness, Carroo signed on November 15, 1982. Gluck tried to negotiate a nonexclusive agree-

ment, which Jefco refused, and Gluck signed four days later.

Paragraph No. 5, the paragraph at issue, provides that the defendants agree that they will not sell, either directly or indirectly, any product that competes with Jefco's product line for an 18-month period, which begins when their employment with Jefco ends. The prohibition applies to any customer of Jefco who was solicited or contacted by, or placed an order with, any salesman during the preceding 18 months before termination. The 18-month restrictive period is extended another 18 months in the event defendants violate the covenant.

In early 1984, Jefco vice-president George believed that Gluck, in addition to working for Jefco, had been selling a few products for a company that he had formed. Gluck was fired on April 30, 1984.

In August 1984, the suit between Jefco and the successor to defendants' former employer was settled. In October, when he was no longer connected with Jefco, Gluck was attempting to sell some of his products to Marquette University. Carroo was there at the same time, trying to sell some of Jefco's products. Marquette was buying about $600 worth of supplies from Jefco out of an annual budget of $85,000. They met with Marquette's buyer, a former employee of Jefco, who reported the meeting to Jefco. Jefco assumed that Carroo had violated his covenant, and he was discharged on November 5, 1984.

Ten days later, Jefco filed a complaint that sought to enjoin defendants from their alleged use of trade secrets and confidential information that they had allegedly misappropriated, which consisted of information about pricing, accounts, and buying procedures. Jefco also moved for a TRO and a preliminary injunction, which was supported by an affidavit by Alex George. The trial court entered and extended a TRO against Carroo. On December 4, 1984, both defendants filed answers and affirmative defenses. Carroo also moved to dissolve the TRO.

After a hearing, the court found that the covenant was void because it had no geographic limitation and because the 18-month extension in case of a violation was an extreme penalty. Moreover, the court found that Jefco did not prove that the information was confidential or that it had a protectable interest. The court dissolved the TRO and refused to issue a preliminary injunction. Jefco appealed.

The issuance of a preliminary injunction is solely within the discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. (*Kessler v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 540, 545, 477 N.E.2d 1287.) The test to determine an abuse of discretion is whether the court's decision is against

the manifest weight of the evidence. (*Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 105, 404 N.E.2d 1097.) The purpose of a preliminary injunction is to preserve the status quo of the parties until there is a hearing on the merits, and it is not used to decide the merits of a case. (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354, 475 N.E.2d 1077.) In order for a court to issue a preliminary injunction, a plaintiff must prove that: (1) he has a clear and lawful right for which he seeks protection; (2) he will suffer irreparable harm; (3) he has no adequate remedy at law; and (4) he is likely to succeed on the merits. *Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151, 474 N.E.2d 383.

■ A restrictive covenant entered into between an employer and employee is not favored by the courts. In some jurisdictions, such covenants are illegal. (See Annot., 3 A.L.R.2d 522 (1949).) Although such a covenant is legal in Illinois, it is carefully scrutinized by the courts. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 713, 390 N.E.2d 68.) Because a restrictive covenant is a partial restraint of trade, a court will ensure that the covenant's intended effect is not to restrict competition *per se.* (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 375, 422 N.E.2d 1034, *appeal denied* (1981), 85 Ill. 2d 567.) The test used by Illinois courts is whether the covenant is reasonably necessary to protect the employer from improper or unfair competition. 97 Ill. App. 3d 373, 376.

■ ■ Jefco claims that the information is both a trade secret and confidential. A trade secret, though difficult to define, has been described as a "plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide it." (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 234, 445 N.E.2d 418, *appeal denied* (1983), 94 Ill. 2d 553.) A trade secret must be defined according to the facts of each case and considered with the following factors: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and his competitor; (5) the effort or money spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated by others. *Smith Oil Corp. v. Viking Chemical Corp.* (1984), 127 Ill. App. 3d 423, 427, 468 N.E.2d 797.

■ Besides showing that the information is a trade secret, an employer can also claim a protectable interest in confidential information. Illinois courts have recognized that an "employer ordinarily has no proprietory interest in his customers, although he can protect confidential information by a reasonable restrictive covenant." (*Smith Oil Corp. v. Viking Chemical Corp.* (1984), 127 Ill. App. 3d 423, 428, 468 N.E.2d 797.) Against this interest, however, is the right of an individual to follow a particular occupation, which is a fundamental right, and "one who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience." 127 Ill. App. 3d 423, 427.

■ The record reveals that defendants called on the same customers for Jefco that they called upon for their prior employer. Defendants would often call on different departments of the same buyer: one would sell to the kitchen staff and the other to the housekeeping staff. Carroo, who worked in the industry for 25 years before being recruited by Jefco, obviously would have extensive personal knowledge of customers and their peculiar buying habits that preceded any knowledge that he derived through his brief employment with Jefco. In fact, Carroo and Gluck were probably recruited precisely because they were experienced salesmen in the industry. Because plaintiff's customer list was already known to defendants and other experienced salesmen in the industry, it was not confidential, and there was no protectable interest. *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358, 425 N.E.2d 1034.

If, indeed, Jefco had any special secret customer list, it was access coded in the company computer. Defendants did not have access to this information and there is no evidence that they illegally obtained or used this coded information.

Furthermore, the record shows that the industry is highly competitive and that Jefco's customers are not exclusive. In *Lincoln Towers*, we noted that customer information is not a trade secret when customers do business frequently with more than one company or otherwise changed businesses frequently so that they were known to the competition. (99 Ill. App. 3d 353, 358.) Assuming that other information, such as price and discount, is confidential, then there is still no protectable interest because this information changes frequently. In sum, the trial court's finding that plaintiff did not prove a protectable interest is supported by the evidence.

■ Similarly, the evidence supports the findings that the covenant was void because it had no geographic limitation and contained an extreme penalty. Here, the covenant on its face contains no geo-

graphic restriction; it merely refers to customers who bought products from Jefco or who were solicited by defendants or any other salesman. It is well settled that a covenant must be reasonable as to time, geographic scope, and activity. (*Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 12, 477 N.E.2d 35.) Here, the unlimited geographic restraint is patently unreasonable. (132 Ill. App. 3d 9, 12-13.) In order to consider any parol evidence that the geographic scope is coextensive with the sales territory, we would first have to hold that the language of the covenant was ambiguous. (*American Family Life Assurance Co. v. Tazelaar* (1985), 135 Ill. App. 3d 1069, 1073.) The language here is not ambiguous and must be strictly construed against the drafter. Although we have enforced covenants that contained no specific geographic area (see, *e.g., Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300), those cases involved a protectable business interest, which we do not have here. Here, unlike those cases, we have a prohibition not only against customers that defendants solicited, but also against customers that defendants never solicited and do not know. Furthermore, the covenant here contains a penalty. Thus, considering the evidence, the court did not abuse its discretion in ruling that the provisions were unreasonable.

Jefco also failed to prove that it has suffered any irreparable harm. In the case of Marquette University, for example, Jefco merely had a $600 share out of a total $85,000 budget, an amount of less than 1%. Moreover, even if there are damages, the proper remedy is a breach-of-contract action and not a preliminary injunction, because for a court to grant injunctive relief, a plaintiff must prove injury to its legitimate business interests that is distinct from a defendant's breach of the restrictive covenant. Otherwise, the covenant is deemed to be an unenforceable attempt to prevent competition *per se. Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 765, 424 N.E.2d 719.

We also stress that Jefco is seeking equitable relief, yet its conduct persuades us that such relief is not warranted. Defendants were recruited from a competitor by Jefco even though it was aware that defendants had signed covenants not to compete. When defendants were sued, they were represented by Jefco's attorney, who later drafted the covenant here and was later disqualified from representing Jefco in this matter because of a conflict of interest. Six months after defendants began working for Jefco without any restrictive covenants, they were given the covenants to sign, with the implied threat that Jefco's financial support of their defense would be withdrawn if they did not sign.

800

In sum, the record supports the inference that defendants had little bargaining power when they signed the covenants. We have held that a restrictive covenant that was signed after an employee relocated and started work was not enforceable because it was a contract of adhesion. (*American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 145-46, 434 N.E.2d 59, *appeal denied* (1982), 91 Ill. 2d 566.) Similarly, commentators have noted that sometimes an employee has no bargaining power because he must either sign the contract or be discharged. See Sabin, *Construing a Viable Restrictive Covenant in Employment Contracts*, 72 Ill. B.J. 310, 311 (1984).

We emphasize that we are not called upon to determine whether defendants' conduct is actionable at law. The issue before us is the propriety of the trial court's action at this preliminary juncture in a chancery proceeding, and we express no opinion as to the ultimate outcome of this litigation. In light of the foregoing, however, we find that the trial court did not abuse its discretion in dissolving the TRO and in refusing to issue the preliminary injunction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.