MARGARET DOLORES O'BRIEN, Adm'r of the Estate of Dennis E. O'Brien, Deceased, Plaintiff-Appellant, v. JOHN MEYER et al., Defendants-Appellees.

First District (6th Division)   No. 1—94—2874

Opinion filed May 17, 1996.

RAKOWSKI, J., dissenting.

Christine E. Smith and John J. O'Connor, both of Chicago, for appellant.

Lord, Bissell & Brook (William C. Anderson III, Hugh C. Griffin, Diane I. Jennings, and Leslie J. Rosen, of counsel), and French, Kezelis & Kominiarek, P.C. (James M. Hofert and Russell P. Veldenz, of counsel), both of Chicago, for appellees.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiff, Margaret O'Brien, administratrix of the estate of her husband, Dennis E. O'Brien, of an order dismissing a wrongful death malpractice complaint against Dr. John Meyer, the Meyer Medical Group and Dr. Thomas Araujo.

The plaintiff filed a complaint in 1979; the case was tried in 1988; a verdict was returned in favor of the defendants; the appellate court reversed and remanded for a new trial (*O'Brien v. Meyer*, 196 Ill. App. 3d 457, 554 N.E.2d 257 (1989)); petition for leave to appeal was denied; and the mandate was issued November 16, 1990.

The plaintiff did not formally move to reinstate the case until May 1994, after the defendants filed a motion to dismiss on the ground that the plaintiff's failure to reinstate the case constituted *laches*. The trial judge allowed the motion to dismiss on the ground of *laches*.

■ Before addressing the merits of the plaintiff's appeal, we must determine the appropriate standard on review. The defendants correctly cite *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 627 N.E.2d 1256 (1994), for a holding that the determination of *laches* is left to the discretion of the trial judge. But *laches* is an affirmative defense and presents a question of fact. *Gaffney v. Harmon*, 405 Ill. 273, 90 N.E.2d 785 (1950). Like any affirmative defense, the burden is on the defendants to establish *laches* by a preponderance of the evidence. *Anderson v. Lybeck*, 15 Ill. 2d 227, 154 N.E.2d 259 (1958).

In *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 814 (4th Cir. 1992), the court said that " '[a]buse of discretion' is a legal term of art; it is not a wooden term but one of flexibility, dependent on the type of case in which it is to be applied and posture of the case when it arises." To us, the "discretion" granted a trial judge in determining the question of *laches* is different from the discretion involved in a number of other rulings by a trial judge; for example, admissibility of evidence, granting or denying a continuance, the scope of discovery, sanctions for discovery violations or sentencing in criminal cases, all of which involve to some degree the weighing of

facts. In *Jefco Laboratories, Inc. v. Carroo*, 136 Ill. App. 3d 793, 483 N.E.2d 999 (1985), the court held that an abuse of discretion occurs when the court's decision is against the manifest weight of the evidence. In *In re Marriage of Batchelor*, 89 Ill. App. 3d 781, 412 N.E.2d 49 (1980), the court held that an abuse of discretion is shown when the judgment of the trial court is found to be palpably erroneous, contrary to the manifest weight of the evidence, or manifestly unjust. See also *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 787, 606 N.E.2d 587 (1992), citing *Jefco Laboratories*, 136 Ill. App. 3d 793, 483 N.E.2d 999. We conclude, therefore, that it is proper for us to examine the record to determine whether the judge's finding that the defendants had established the plaintiff's guilt of *laches* was against the manifest weight of the evidence.

We turn now to the record upon which the judge based her decision. The defendants filed a joint motion to dismiss on April 13, 1994. That motion alleged that the defendant Dr. John Meyer had died and as a result his estate was hindered in asserting a defense to the plaintiff's case. At the same time the defendants filed a motion to dismiss, they filed a motion to spread the death of Dr. Meyer of record. He had died on February 19, 1994. His wife, Marcella Meyer, was substituted as a party defendant. The motion also alleged that the original expert retained by Dr. Araujo had also died since the mandate had been issued by the appellate court. The motion alleged further that "defendants have not engaged in any conduct which might bar the application of *laches*."

On April 28, 1994, the plaintiff filed a motion to set the case for trial. Attached to the motion were the affidavits of the plaintiff and Dr. Gisella Albrecht, who had been the plaintiff's expert witness at the trial and was to testify again as the plaintiff's expert. The plaintiff also filed a reply to the motion to dismiss which incorporated the motion to set for trial. In her affidavit the plaintiff alleged that since 1990 she had been caring for her paraplegic son, whose spine had been severed. The affidavit went into great detail explaining her son's surgeries and hospitalizations and the time she had to spend caring for and visiting her son. She said that her son's condition had improved to the point that she could attend the trial.

In the affidavit of Dr. Albrecht, she said that she had had a relapse of tuberculosis, a coronary, a coronary angioplasty, a massive pulmonary embolism and frequent bouts of recurring bronchitis and cardiac arrhythmic abnormality. She was under a cardiologist's care. Since 1990 she had had conversations with the attorney for the plaintiff and had told her that she could not tolerate the stress that she suffered from the way she was treated by the attorneys for the

defendants at the first trial. She was in Germany at the time the affidavit was made, and she intended to return to the United States at the end of August 1994.

The reply included a letter dated January 8, 1993, from the attorney for Dr. Araujo to the plaintiff's attorney confirming that he would present his medical expert for his discovery deposition on January 19, 1993. Also included were the answers of Dr. Araujo to interrogatories in which Dr. Araujo identified Dr. Leonard Berlin as his medical expert and recited what Dr. Berlin's opinion would be. Those answers were filed also on January 8, 1993.

At the hearing on the motion, as is often the case, the "evidence" consisted primarily of the statements of the attorneys. *Cf. Miller v. Bloomberg*, 126 Ill. App. 3d 332, 335, 466 N.E.2d 1342 (1984). No objection was made by any of the attorneys or the court to that procedure. The attorney for the estate of Dr. Meyer spoke first. He recited the procedural history of the case and referred to an affidavit from a treating oncologist who said that Dr. Meyer was initially diagnosed with cancer in April of 1993 and that within a short period of time he "deteriorated to the point where he was basically incompetent and would have been unable to testify, would have been unable to assist counsel, anything of that nature." He concluded that the estate of Dr. Meyer was prejudiced due to the death of Dr. Meyer and that the court should dismiss the case because of *laches*.

The attorney for Dr. Araujo spoke next. He told the judge that Dr. Ringus, who was his original expert in the case, passed away in 1992. The death of Dr. Araujo's expert, he maintained, prejudiced him. He did not identify the exact time in 1992 that Dr. Ringus died.

The attorney for the plaintiff then spoke. She recited certain facts, the truth of which was never contested by the attorneys for the defendants. She has set out those facts in her briefs, and neither of the defendants' attorneys contests her recitation of the facts. Those facts are as follows:

(1) The defendants knew of the plaintiff's problems with the health of her son.

(2) On July 12, 1991, a stipulation to withdraw the report of proceedings was signed by all of the attorneys, and an agreed order was entered by Judge Arthur Sullivan on that date permitting the plaintiff's attorney to withdraw the report of proceedings.

(3) On July 12, 1991, a motion was filed by the plaintiff to set the case for trial. The motion was to be heard on July 29. On July 29 the plaintiff's attorney and the attorney for Dr. Meyer had a telephone conversation regarding the withdrawing of the motion to set for trial because of "the condition of the plaintiff and the condition of the witnesses."

(4) On August 30, 1991, a letter was sent from the attorney for Dr. Meyer to the plaintiff's attorney regarding setting the matter for trial. The plaintiff's attorney told the attorney for Dr. Meyer about the "plaintiff and her son and the inability to have this matter set for trial."

(5) Sometime in "later 1992" the attorney for the plaintiff received a notice from the attorney for Dr. Araujo regarding the death of his expert and the appointment of a new expert.

(6) On December 15, 1992, the plaintiff filed a notice of deposition of the new expert. On January 8, 1993, the plaintiff's counsel and Dr. Araujo's attorney agreed by telephone to set the deposition of Dr. Berlin, the new expert. On January 15, 1993, there were three telephone calls between the plaintiff's attorney and Dr. Araujo's attorney. The plaintiff requested a report of Araujo's expert; the defendant said there was none.

(7) On January 18, 1993, the plaintiff's attorney had telephone conversations with the attorneys for both doctor defendants regarding the deposition of Dr. Berlin. In one of the conversations, Dr. Araujo's attorney requested a change in the time for the deposition because the attorney for Dr. Meyer could not appear for the time set. The time of the deposition was changed for the convenience of the lawyer for Dr. Meyer. The attorney for Dr. Araujo "faxed" the curriculum vitae of the expert to the plaintiff's attorney.

(8) On January 19, 1993, the plaintiff took the deposition of Dr. Araujo's expert; the attorneys for the doctor defendants were present. A conversation following the deposition concerned the plaintiff and her son and her son having problems and about trial dates.

(9) On June 22, 1993, the plaintiff's attorney had a conversation with the attorney for Dr. Meyer; and on June 30, 1993, the attorney for Dr. Meyer filed a change of address with the court.

(10) On January 18, 1994, the attorney for Dr. Meyer called the attorney for the plaintiff and asked when she was "going to set it for trial." She told him again of the condition of the plaintiff and her son and that the plaintiff could not then appear at trial. For the first time, Dr. Meyer's attorney advised her that Dr. Meyer was ill and in a coma.

At the conclusion of the hearing, the judge took the case under advisement. She said, "I have no problems with saying that the case was pending. The problem was that it had not been reinstated."

On the date of her decision, July 29, 1994, the judge said that the motion of the plaintiff to withdraw the record did not constitute a motion to reinstate and that the defendants' attorney filing a change of address did not reinstate the case. She then dismissed the case with prejudice on the ground of *laches*.

■ The elements of *laches* are set forth in a case cited by the defendants, *Pyle v. Ferrell*, 12 Ill. 2d 547, 553, 147 N.E.2d 341 (1958), in which the supreme court said that a suit is barred by *laches* " 'where and only where' " there is "(1) [c]onduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit[;] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant."

In *Miller v. Bloomberg*, 126 Ill. App. 3d 332, 466 N.E.2d 1342 (1984), the defense of *laches* was successfully interposed where prevailing appellants on appeal delayed in reinstating their case in the circuit court. The court held that the third element of *laches* identified in *Pyle v. Ferrell*, that the defendant lacked knowledge or notice that the complainant would assert the right upon which he bases his suit, was not applicable "[w]hen *laches* is sought to be invoked at any point after the lawsuit is filed and defendant is notified of the suit." *Miller*, 126 Ill. App. 3d at 337. The *Miller* court reaffirmed the holding of *Rosewood Corp. v. Fisher*, 20 Ill. App. 3d 422, 314 N.E.2d 294 (1974), that the party who prevails on appeal has the duty to reinstate proceedings at the trial level.

The record shows that the plaintiff in the case before us never filed a formal motion to reinstate unless the withdrawn motion to set for trial could be considered a motion to reinstate; and it appears to us that the defendant's failure to formally reinstate the case before the defendants filed their motion to dismiss was the basis of the judge's dismissal order.

■ At one time the law provided that the filing of the mandate in the circuit court was the obligation of the parties and the failure to file the mandate within the prescribed time barred any further action in the trial court. *Busser v. Noble*, 32 Ill. App. 2d 181, 177 N.E.2d 251 (1961). Supreme Court Rule 368 now provides that the clerk of the reviewing court shall transmit to the circuit court the mandate of the reviewing court (134 Ill. 2d R. 368); and Supreme Court Rule 369(a) provides that the clerk of the circuit court shall file the mandate promptly upon receiving it. 134 Ill. 2d R. 369(a). Supreme Court Rule 369(c) provides as follows:

> "When the reviewing court remands the case for a new trial or hearing and the mandate is filed in the circuit court, the case shall be reinstated therein upon 10 days' notice to the adverse party." 134 Ill. 2d R. 369(c).

■ "In determining whether a party has reinstated a case within a reasonable time, a trial court should take into account the totality of the circumstances, particularly any reason proffered for undue delay." *National Underground Construction Co. v. E.A. Cox Co.*, 273 Ill. App. 3d 830, 836, 652 N.E.2d 1108 (1995). The issue before us, therefore, is whether the totality of the circumstances has established any reason for the delay on the part of the plaintiff in formally filing the motion to reinstate. In our judgment, the totality of the circumstances necessarily includes the conduct of the defendants. "[T]he propriety of applying the doctrine of laches depends upon the conduct and situation of all the parties, not solely upon those of one." 27 Am. Jur. 2d *Equity* § 162 (1966). Furthermore, an adverse party may not take advantage of a delay to which he has contributed, and *laches* may not be imputed from a plaintiff's delay in pursuance of an agreement with the defendant that the latter will not take advantage of it or under such circumstances as to show an acquiescence in the delay by the defendant. 30A C.J.S. *Equity* § 147 (1992). It is also said that a continued recognition or acknowledgment by the defendant of the plaintiff's right is generally sufficient to account for delay; and that the defendant's silence or other conduct may indicate acquiescence in the plaintiff's right. 30A C.J.S. *Equity* § 147 (1992).

In *Rogers v. Barton*, 386 Ill. 244, 253, 53 N.E.2d 862 (1944), the supreme court said that "it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done *** had the right been properly asserted that the defense of *laches* will be considered."

■ The affidavit of the plaintiff establishes the grievous illness of her son and the extreme difficulties in participating in a trial with which that illness confronted her. The record also establishes that the defendants were willing participants in any delay. In July 1991, the plaintiff filed a motion to set the case for trial, and the defendants acceded to her wish to withdraw the motion. Among other actions of the defendants is the fact that they participated in the deposition of Dr. Araujo's new expert. It is clear to us that all the parties proceeded as though the case had been reinstated. The fact that the plaintiff did not go through the technical procedure of having the case reinstated pursuant to Rule 369(c) is not controlling. To hold otherwise under these facts would be a rigid and unreasonable adherence to formalism to the detriment of fairness. We note that General Order 6.2(c) of the circuit court, which the defendants cite, points out that the "case shall be set for trial on motion of either party." Cook Co. Cir. Ct. G.O. 6.2(c) (eff. October 24, 1986). There was nothing to stop the defendants from moving to have the case set for trial.

The estate of Dr. Meyer maintains that the delay has prejudiced it because Dr. Meyer is no longer available to testify and that his reported testimony at a subsequent trial would be insufficient to remove the prejudice. We do not deprecate the argument of the estate of Dr. Meyer, but we point out that he was not able to be a witness from shortly after April 1993. We judge that the equities are not balanced in favor of the estate of Dr. Meyer because the estate will have to make do with Dr. Meyer's testimony at the first trial when we weigh that factor against the plaintiff's loss of any right to maintain the action at all.

Dr. Araujo's claim of prejudice is based on his claim that he had to hire a second expert and because he would not be able to confer with Dr. Meyer during the trial. The equities of the case weigh even less in favor of Dr. Araujo than they do in favor of the estate of Dr. Meyer.

We granted the defendants leave to file additional authority: *People v. NL Industries, Inc.*, No. 1—94—0760 (Feb. 14, 1996). We find that case has no factual application to the facts of this case. The State's Attorney of Cook County represented the Illinois Environmental Protection Agency. After remand, "the State did nothing to reinstate *or otherwise prosecute the case*" until almost 10 months after the mandate issued. (Emphasis added.) *NL Industries*, No. 1—94—0760 (Feb. 14, 1996). It was the position of the State in the trial court and in the appellate court "that it need not offer any reason or explanation for this delay." *NL Industries*, No. 1—94—0760 (Feb. 14, 1996).

We judge, therefore, that the manifest weight of the evidence shows a course of conduct on the part of both defendants that illustrates their acquiescence in proceeding without a formal order of reinstatement and by consenting to any delay. In sum, we hold that the defendants have not established by a preponderance of the evidence the allegation of their motion to dismiss that they had "not engaged in any conduct which might bar the application of *laches.*"

For these reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McNAMARA, J., concurs.

JUSTICE RAKOWSKI, dissenting:

It is my opinion that the decision to deny reinstatement was not an abuse of discretion.

Nor do I agree with the majority's position that causing plaintiff to comply with Supreme Court Rule 369(c) is only technical and would amount to a rigid and unreasonable adherence to formalism.

Finally, although I agree that the application of *laches* depends upon the conduct of all the parties, I fail to understand how a defendant can be faulted for failing to cause plaintiff's case to be reinstated or set for trial.

Accordingly, I would affirm the judgment of the circuit court.