637 N.E.2d 420 (1994)
263 Ill.App.3d 955
201 Ill.Dec. 831
Clarice I. McSWEENEY, Donald N. Brown and Charles H.G. Kimball individually and d/b/a WSSB Partnership, an Illinois partnership, Plaintiffs-Appellees,
v.
Kenneth J. BUTI and Carl Weilding individually and as partners of the Buti, Weilding and McSweeney, an Illinois partnership, Defendants-Appellants.
No. 1-92-1229.
Appellate Court of Illinois, First District, First Division.
April 25, 1994.
Denial of Rehearing As Modified on July 18, 1994.
*422 Office of Di Monte & Lizak, Park Ridge (Chester A. Lizak and G.F. Gallagher, of counsel), for appellant.
Office of Ashcraft & Ashcraft, LTD., Chicago (Timothy J. McGonegle, of counsel), for appellee.

(MODIFIED ON DENIAL OF REHEARING)
Justice MANNING delivered the opinion of the court:
Plaintiffs, Clarice L. McSweeney, and Donald N. Brown and Charles H.G. Kimball, individually and d/b/a WSSB Partnership, an Illinois partnership, filed suit, on December 10, 1986, against defendants, Kenneth Buti and Carl Weilding, individually and as partners of the Buti, Weilding and McSweeney Partnership, an Illinois partnership. Clarice L. McSweeney is the administrator of the estate of her husband, William J. McSweeney, who was a partner in the Buti, Weilding and McSweeney partnership. Plaintiffs Donald N. Brown and Charles H.G. Kimball, individually and d/b/a WSSB partnership are assignees of proceeds of a portion of McSweeney's partnership interest. Plaintiffs sought declaratory judgment, an accounting and damages against defendants for their unilateral sale of the partnership property to themselves. Judgment was entered in favor of plaintiffs based upon the trial court's finding that defendants had breached their fiduciary duty by selling partnership property to themselves. Following expert testimony as to the value of the partnership property at the time of the purported sale to defendants, the trial court entered judgment in the amount of $54,843.76 in favor of plaintiffs.
Defendants raise three issues on appeal: (1) Whether the trial court erred in finding defendants liable for breach of fiduciary duty despite their purchase of the property in question for approximately 85% of its fair market value or whether the sale was commercially reasonable; (2) Whether the trial court erred in failing to bar plaintiffs' claim based upon defendants' affirmative defense of laches; and (3) In the alternative, whether the court should vacate the judgment in favor of plaintiffs and enter an order directing defendants to offer the property for sale at a public sale.
On March 20, 1982, defendants, Kenneth J. Buti and Carl Weilding together with William J. McSweeney formed a partnership commonly known as, Buti, Weilding and McSweeney Partnership. Pursuant to the terms of the agreement creating the Buti, Weilding and McSweeney Partnership, Kenneth J. Buti, Carl Weilding and William J. McSweeney were each general partners. Since the formation of the Buti, Weilding and McSweeney Partnership, the partners have transacted partnership business, acquired assets and incurred liabilities in the name of the partnership, divided losses pursuant to the partnership agreement and held themselves out as partners. On May 21, 1984, William J. McSweeney died testate in Lake County, Illinois. Clarice McSweeney was appointed administrator of William's estate. Plaintiffs state that defendants became aware of William J. McSweeney's death on or shortly after that date. At all times since the death of William J. McSweeney, and up until on or about June 27, 1984, the defendants have dealt with plaintiff Clarice L. McSweeney as the successor in interest to William J. McSweeney, and have conducted partnership business with plaintiff Clarice L. McSweeney. In the interim, the following events transpired:
1) Letter of July 12, 1984, from Buti's attorney to Norman Olson, attorney for legatees or heirs inquiring of their desire to continue in the partnership.
2) Letter of August 10, 1984, from Attorney Olson to Buti's attorney advising that neither McSweeney nor her son are interested in becoming partners.
3) Partnership capital call dated January 7, 1985, mailed to executor of McSweeney's estate.

*423 4) Letter of January 18, 1985, from Attorney Olson to Buti's attorney advising that estate will not contribute capital.
5) Letter of May 24, 1985, from Buti's attorney advising Olson that a sale will be necessary if McSweeney cannot contribute capital.
6) Notice of public sale mailed on June 7, 1985, to all interested parties and commercial brokers in the area.
7) Letter of July 12, 1885, from Buti's attorney to Attorney Olson advising that Buti and Weilding will proceed with the purchase of the property and to let them know if they know of anyone who is willing to make a better offer.
8) Letter of July 26, 1985, from Buti's attorney to Olson that Buti and Weilding will defer closing while parties seek other investors or purchasers.
The partnership agreement had no special provision for what happens upon the death of a partner. There was a period of about one year where the parties tried to resolve their partnership interests. In 1985 Buti and Weilding notified Mrs. McSweeney of the financial difficulties of the partnership and Mrs. McSweeney notified them that the estate could not contribute anything because they did not have the money to contribute. Buti and Weilding gave notice to Mrs. McSweeney that they were going to conduct a sale of the property. They also advised the estate that if no bidders responded they were going to bid enough to pay off the creditors. Only the attorney for the estate, Buti and Weilding attended the auction, and Buti and Weilding submitted the lone bid of $724,000.00 for the property. Buti and Weilding assert that the reason they bid $700,000 instead of $900,000, was due to the fact that they would have to pay taxes on money that they would not be receiving. Buti and Weilding offered to hold off closing if they could get a better deal. The closing occurred on December 31, 1985 for tax reasons.
On December 31, 1985, Buti and Weilding purchased partnership assets for roughly 85% of their fair market value. Subsequent to the sale they built 10 additional units on Parcel B, in 1986. Parcel A had 10 units prior to the sale. On December 10, 1986, plaintiffs filed suit against Buti, Weilding and the Partnership alleging a breach of fiduciary duty on the part of defendants for purchasing the property at a price substantially below its fair market value. Mrs. McSweeney alleges there was no accounting to her for her husband's interest.
A trial was held on the issue of liability. The court held that a trustee owes the partner a fiduciary duty. We agree. The trial court held the sale void based on a finding that the defendants breached their fiduciary duty but acted upon dire financial pitfalls and some semblance of laches on the part of the plaintiffs. The court ordered a hearing as if the sale had been conducted at a truly public sale or judicial sale to determine the value of the property at the time of the purported sale. The court then ruled that December 31, 1985, was the valuation date for the property because that was the date of the purported sale.
Following a trial on the valuation of the partnership property, the court made a finding that the value of the partnership property as of the date of the purported sale was $1,073,000.00. After determination of the partnership obligation, the trial court entered judgment in favor of plaintiffs and against defendants Buti and Weilding individually and as partners of the Buti, Weilding & McSweeney Partnership in the amount of $54,843.76, representing McSweeney's one-third interest in the actual value of the partnership property. This timely appeal follows.
The first issue is whether the trial court erred in finding defendants liable for breach of their fiduciary duty despite their purchase of the property in question for approximately 85% of its fair market value or whether the sale was commercially reasonable. Section 31 of the Illinois Partnership Act provides that the death of any partner operates to dissolve the partnership. 805 ILCS 205/31(4), (1993). When a partnership has been dissolved for any reason, any one partner can wind up the partnership affairs and collect the partnership assets. (Hamilton v. Williams (1991), 214 Ill.App.3d 230, 158 Ill. Dec. 91, 573 N.E.2d 1276; and 805 ILCS *424 205/35(1)(a). On the death of a partner his interest in the partnership property vests in the surviving partner to be held by the surviving partner in trust. (Mamolella v. Mamolella (1979), 73 Ill.App.3d 398, 29 Ill.Dec. 542, 392 N.E.2d 99.) It is well settled that a partner owes fiduciary duties to his partners. (Updike v. Wolf & Co. (1988), 175 Ill.App.3d 408, 124 Ill.Dec. 876, 529 N.E.2d 993.) The purchase by a trustee for his own account of property of his trust is a breach of this duty. (Home Federal Savings and Loan Association v. Zarkin (1982), 89 Ill.2d 232, 59 Ill. Dec. 897, 432 N.E.2d 841.) In Zarkin, the court reasoned that a trustee should be prohibited from purchasing trust property because it would be in his own best interest to violate his duty to his beneficiary: as purchaser, the trustee is naturally interested in acquiring the property at the lowest possible price, while loyalty to the beneficiary dictates that he seeks to obtain the highest possible price. In Zarkin, Karen and Leon Zarkin created a conventional trust of their residence property with Devon National Bank. Devon, as trustee, at the Zarkins' direction, executed a first mortgage of the trust property with Home Federal Savings and Loan Association as mortgagee. The Zarkins were unable to make payments to Home Federal on the first mortgage. The Zarkins borrowed $14,000 from Devon and later defaulted on that loan. Home Federal sued Devon, as land trustee, and the Zarkins to foreclose its first mortgage. Devon responded by alleging the debt due it from the Zarkins and the assignment to it of their beneficial interest. The circuit court entered a decree of foreclosure finding the mortgagee entitled to $63,254.50, and Devon entitled to a lien in the amount of $14,626.25, subordinate to Home Federal's mortgage lien. The property was ordered sold and the redemption period determined.
Home Federal bid on the property for its judgment plus certain costs, at the sheriff's sale. Devon did not bid at the sale. Eight days before the expiration of the redemption period, Devon, without notifying the Zarkins, purchased the certificate of sale from Home Federal. Immediately upon learning of the purchase by Devon, the Zarkins filed suit in the circuit court, asserting that Devon's action was a breach of its fiduciary duty as trustee, and requested that the sale be set aside and that the redemption period be extended to enable them to redeem, or to decree that Devon had redeemed as trustee for the Zarkins' benefit, and enjoin Devon from taking any further action with respect to the property. The circuit court judge denied the petition and the Zarkins appealed. The Appellate Court, with one justice dissenting, affirmed the judgment of the circuit court and the Supreme Court reversed and remanded. The Supreme Court held that the trustee may not purchase trust property in a private transaction, or, under the prevailing view, at a public auction or foreclosure or other judicial sale that was brought about by the trustee. Home Federal Savings and Loan Association v. Zarkin, 89 Ill.2d 232, 240, 59 Ill.Dec. 897, 432 N.E.2d 841. The Court further reasoned that even when the trustee does not conduct the sale and had no hand in bringing it about, if he is allowed to purchase partnership property for his own account, self-interest might tempt him to try, directly or indirectly, to keep the price down. Several jurisdictions have recognized exceptions to the general rule and permitted a trustee's purchase of trust property to stand where under the circumstances of the case the reason for prohibition ceased to exist. (Zarkin, 89 Ill.2d 232, 241, 59 Ill.Dec. 897, 432 N.E.2d 841, citing Victor v. Hillebrecht (1950), 405 Ill. 264, 90 N.E.2d 751.) Examples of exceptions recognized in Zarkin include: (1) where there is no possibility of advantage to the trustee; or (2) the purchase is necessary to protect the interest of the beneficiary. Factors to consider include: (1) A trust agreement authorizing the purchase; (2) The trustee's inability to control the circumstances of the sale or their price; (3) The price paid was the prevailing price on the open market; and (4) The trustee did not solicit or induce the other beneficiaries to sell but bought on the open market through a broker.
In the instant case, on the death of McSweeney, his interest in the partnership property vested in the surviving partners, Buti and Weilding, to be held in trust for the beneficiaries. (O'Connell v. Pharmaco et al. *425 (1987), 164 Ill.App.3d 68, 73, 115 Ill.Dec. 277, 517 N.E.2d 688; and 805 ILCS 205/25(2)(d), (1993). Buti and Weilding gave Mrs. McSweeney notice that the partnership was encountering financial difficulties and of a need for additional capital. Mrs. McSweeney refused to contribute additional capital. Later, Buti and Weilding gave Mrs. McSweeney notice that they were conducting a sale of the property and if there are no bidders they were going to bid enough to pay off the creditors. No one else except the attorney for the estate, Buti and Weilding attended the auction. Buti and Weilding submitted the only bid of $724,000.00 for the partnership property. They explained their bid of $700,000 instead of $900,000, was due to the fact that they would have to pay taxes on money they would not be receiving. Buti and Weilding offered to hold off closing if they could get a better deal.
In the instance case, the exceptions to the general rule that a trustee may not purchase trust property in a private transaction, or, under the prevailing view, at a public auction or foreclosure or other judicial sale that was brought about by the trustee, are inapplicable. In the instant case there was no partnership agreement that permitted the purchase by the trustees. The trustees controlled the circumstances of the sale and the price. The trustees did not pay the prevailing price on the open market. The trustees solicited the beneficiaries to sell, all to the advantage of the trustees, who paid 85% of the fair market value of the trust property.
The court held the sale void because Buti and Weilding breached their fiduciary duty and ordered a valuation hearing to determine the value of the partnership property at the time of the sale. At the hearing on the value of the property the court determined that as of the date of the purported sale the partnership property was worth $1,073,000.00. As noted in Zarkin, the trustees should be prohibited from purchasing trust property because it would be in their own best interest to violate their fiduciary duty to their beneficiaries. The trustees have an interest in purchasing the property at the lowest possible price, yet loyalty to the beneficiaries requires that they seek the highest possible price. This puts the trustees' interest in conflict with the interest of the beneficiaries. Prohibiting the trustees from purchasing partnership property removes the temptation to keep the price low.
The second issue is whether the trial court erred by failing to bar plaintiffs' claim based upon defendants' affirmative defense of laches. Laches is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. (McDunn v. Williams (1993) 156 Ill.2d 288, 330, 189 Ill.Dec. 417, 620 N.E.2d 385, citing People ex rel. Daley v. Strayhorn (1988), 121 Ill.2d 470, 118 Ill.Dec. 387, 521 N.E.2d 864; and Finley v. Finley (1980) 81 Ill.2d 317, 410 N.E.2d 12.) Laches has been defined as a failure to assert a right over a period of time which, when taken in conjunction with all other circumstances, would result in undue prejudice to the other party. (Peskin v. Duetsch (1985), 134 Ill.App.3d 48, 89 Ill.Dec. 28, 479 N.E.2d 1034; and Johnson v. Central Standard Life Insurance Company (1968), 102 Ill.App.2d 15, 243 N.E.2d 376.)
Where a legal remedy is available for the same claim, a court of equity may look to the legal limitation period to determine if a cause of action is barred by laches. (Schlossberg v. Corrington (1980), 80 Ill.App.3d 860, 400 N.E.2d 73.) The general rule, subject to a few exceptions, is that an action for a partnership accounting cannot be brought until the partnership has been dissolved. (Englestein v. Mackie (1962), 35 Ill.App.2d 276, 296, 182 N.E.2d 351.) In the absence of any agreement to the contrary, a partner's right to an accounting accrues at the date of dissolution. (Schlossberg v. Corrington (1980), 80 Ill.App.3d 860, 35 Ill.Dec. 936, 400 N.E.2d 73.) In the instant case, the death of a partner dissolved the partnership. 805 ILCS 205/31(4), (1993). McSweeney died on May 21, 1984. On August 10, 1984, Buti and Weilding were notified that neither Mrs. McSweeney nor her son intended to become partners. The complaint was filed on December 10, 1986.
*426 In the instant case, the trial court in its findings stated that there was some semblance of laches on the part of plaintiffs. However, laches is not apparent on the face of the complaint. The right to maintain an action for accounting had not expired. Additionally, since there was not an unreasonable delay in bringing an action for relief that prejudiced the rights of the other party, the doctrine of laches is not applicable to the case at bar. Therefore, Mrs. McSweeney is not precluded from maintaining an action for an accounting by reason of the 5 year statute of limitation. Schlossberg v. Corrington 80 Ill.App.3d 860, 864, 35 Ill.Dec. 936, 400 N.E.2d 73; and 735 ILCS 5/13-205 (1993).
The final issue is whether the circuit court should vacate the judgment of $54,843.67 for plaintiffs and enter an order directing defendants to offer the property for sale at a public sale. In Zarkin, 89 Ill.2d 232, 244, 59 Ill.Dec. 897, 432 N.E.2d 841, the court held:
Where a trustee has purchased trust property in the breach of the duty of loyalty, the beneficiary has several possible alternative remedies. If the trustee has not resold the property, he can be compelled to reconvey to the trust and to account for any income received from the property; or he can be ordered to offer the property for sale, and if it is sold for more than the amount the trustee paid for it, the trustee will be accountable for the excess; or, if the trustee has purchased the property below its actual value, he may be allowed to keep it but required to pay the beneficiary the difference between the value at the time of purchase and the amount he paid for it. Whichever course is followed, the trustee is entitled to receive the consideration he paid for the property, with interest.
After determination of the partnership obligation, the trial court entered judgment in favor of plaintiffs and against defendants Buti and Weilding individually and as partners of the Buti, Weilding & McSweeney Partnership. The amount of the judgment was $54,843.76, which represented McSweeney's one-third interest in the actual value of the partnership property.
In the instant case, the trustees purchased the property below its actual value, therefore, they can be required to pay the beneficiaries the difference between the value at the time of the purchase and the amount they paid for it. The value of the property at the time of the purchase was $1,073,000 and the purchase price was $724,000. After deduction of the partnership obligations the trial court entered judgment in favor of plaintiffs in the amount of $54,843.76, representing McSweeney's one-third interest in the actual value of the partnership property.
Defendants sought clarification of the trial court's ruling suggesting that when a partner has breached his fiduciary duty, several possible alternative remedies are available to the remaining partners, as discussed above. Defendants are suggesting that the most equitable solution would have been to order a sale wherein each party was to receive the amount due each of them. Plaintiffs are not seeking to be restored as a partner nor are they seeking to have the property offered for sale. In fact, plaintiffs suggest that a judicial sale would be a drastic measure.
Where a trustee has purchased trust property in breach of the duty of loyalty, the beneficiary has several possible alternative remedies. (Home Federal Savings and Loan Association v. Zarkin, 89 Ill.2d 232, 244, 59 Ill.Dec. 897, 432 N.E.2d 841.) In the instant case, the beneficiaries expressly stated that they were seeking the full value of the partnership interest plus statutory interest and costs. They also stated they were not seeking a judicial sale as defendants suggest. Thus, we agree with the entry of a $54,843.76 judgment by the trial court but disagree with the language, "I will void the sale." The language of the holding warrants clarification. While the circuit court judge articulates the language of voiding the sale, the sale was not voided. The circuit court's order states, "The sole issue at trial is the actual value at the time of the purchase by the defendants." By entering the judgment of $54,843.76, the circuit court properly allowed the trustee to keep the property it purchased below its actual value and to pay the beneficiaries the difference between the *427 value at the time of purchase and the amount they paid for it.
Judgment of the trial court is affirmed.
BUCKLEY and O'CONNOR, JJ, concur.