# Illinois Official Reports

## Appellate Court

---

### *Osler Institute, Inc. v. Miller*, 2015 IL App (1st) 133899

---

| | |
|---|---|
| Appellate Court Caption | OSLER INSTITUTE, INC., Plaintiff-Appellant, v. RICHARD C. MILLER, Defendant-Appellee (Constance Stanley, Deborah McIntosh, Thomas Jeffers, and Nighthawk Medical Educators, Ltd., Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3899 |
| Filed | January 9, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a consent decree entered for plaintiff based on plaintiff's numerous claims, including breach of fiduciary duty and duty of loyalty, misappropriation of trade secrets, and breach of contract, when defendant and others, while employed by plaintiff's nonprofit corporation, established a competing business that provided similar services with materials misappropriated from plaintiff's business, the trial court properly dismissed plaintiff's complaint on the ground of *laches*, where plaintiff was not diligent in filing suit and the delay prejudiced defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CH-11260; the Hon. Richard J. Billik, Jr., Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Steven L. Blakely and Nicolas J. Boileu, both of Acton & Snyder, LLP, of Danville, and James G. Bonebrake, of Friedman & Bonebrake, P.C., of Chicago, for appellant. |
| | Troy S. Radunsky and Jason E. DeVore, both of DeVore Radunsky LLC, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Gordon and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff Osler Institute, Inc., appeals from the circuit court's granting of defendant Richard Miller's motion to dismiss Osler's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)) and the circuit court's denial of Osler's motion to strike an affidavit. On appeal, Osler argues that: (1) the circuit court erred by granting Miller's section 2-619(a)(9) motion to dismiss on the basis of *laches*; and (2) the circuit court erred by denying Osler's motion to strike Miller's affidavit in support of his section 2-619(a)(9) motion to dismiss. We affirm.

¶ 2        In July 2005, Osler filed suit in Cook County against: defendant Richard Miller; Constance Stanley, Deborah McIntosh, and Thomas Jeffers, who are not parties to this appeal; and Nighthawk Medical Educators, Ltd., which is not a party to this appeal, in case No. 05 CH 11260 (2005 action). According to the complaint, Osler is a "non-profit corporation engaged in medical education" with a principal place of business in Terre Haute, Indiana. It offers "specialty review courses to help physicians *** prepare for their board exams." Osler alleged that, in April 2005, Miller and Jeffers incorporated Nighthawk and then, along with Stanley and McIntosh, did business as principals of Nighthawk while still employed by Osler using Osler's resources to do so. As a result, Osler alleged causes of actions including a breach of fiduciary duty and duty of loyalty, misappropriation of trade secrets, breach of contract, tortious interference with Osler's business relations and prospective economic advantage, tortious interference with Osler's contractual relations, tortious interference with fiduciary duty and duty of loyalty, and civil conspiracy.

¶ 3        On September 14, 2005, the circuit court entered a consent decree between Osler and Miller, Stanley, McIntosh, and Nighthawk. The consent decree barred Miller, Stanley, McIntosh, and Nighthawk from: competing with Osler; soliciting, contacting, or contracting with any employee of Osler; and acquiring, utilizing or disclosing, directly or indirectly, Osler's trade secrets or confidential information obtained while Miller, Stanley, and McIntosh were employed by Osler. The consent decree also provided:

"1. The Court has jurisdiction over the subject matter herein and has personal jurisdiction over all parties to this action pursuant to 765 ILCS § 1065/1 *et seq.* and 735 ILCS § 5/2-209(a)(1), (a)(2), (a)(7), (a)(11) and/or (b).

2. Venue is proper in this Circuit pursuant to 735 ILCS § 5/2-101.

3. The term of this Consent Decree is 36 months from the date of entry.

4. The geographic scope of this Consent Decree is the United States of America.

* * *

16. This Court retains jurisdiction of this action for the purpose of enforcing or modifying this Consent Decree and for the purpose of granting such additional relief as may be necessary or appropriate."

¶ 4 On May 8, 2006, Osler gave notice that it would present a verified petition for rule to show cause before the circuit court. The attached petition alleged that Miller had violated the consent decree by serving as a faculty member for one of Osler's competitors, MD Exam Prep, and by unlawfully disclosing Osler's confidential information and proprietary trade secrets to MD Exam Prep. Specifically, Osler alleged that MD Exam Prep was offering the same course as Osler, "Radiation Oncology," in the same city as Osler, Louisville, Kentucky, with the same faculty as Osler, on almost exactly the same days as Osler.

¶ 5 On May 26, 2006, Osler filed a fee petition based on the violation alleged in its verified petition for rule to show cause. The fee petition alleged that Osler learned of Miller's violation of the consent decree the week of May 1, 2006. The fee petition also totaled the attorney fees and costs incurred as a result of the violation. The petition stated that, "[c]onsistent with the Consent Decree, Osler reserves the right to seek additional attorneys' fees and other expenses and costs incurred in connection with enforcing the degree for its remaining term, or until September 14, 2008."

¶ 6 In August 2006, the circuit court entered an order that Miller was to pay Osler a total of $13,379.35, the final payment being due on September 21, 2006. The order also stated that the court retained jurisdiction to enforce the terms of the 2005 consent decree.

¶ 7 On September 26, 2008, 12 days after the 2005 consent decree expired, Osler filed suit against Miller, Stanley, McIntosh, and 18 other defendants in the Vigo County superior court in the state of Indiana (Indiana action). The complaint alleged that, two years prior on September 27, 2006, Osler learned that defendants, including Miller, were sending out stolen copies of Osler lecture notes, PowerPoint files, and "other valuable and confidential files" using various business names in order to compete with Osler. Specifically, Osler alleged defendants had violated the consent decree in March and April 2006 in Toronto, Ontario, Canada, and in June 2006 in Louisville, Kentucky.

¶ 8 In November 2009, the Vigo County superior court granted Miller's motion to dismiss the Indiana action, finding that the court lacked subject matter jurisdiction pursuant to the consent decree and also based on the doctrine of comity. See *Osler Institute, Inc. v. Miller*, No. 84A05-1003-PL-237, slip op. at 5 (Ind. Ct. App. Sept. 30, 2010); see also *Hermesdorf v. Wu*, 372 Ill. App. 3d 842, 850 (2007) (a reviewing court may take judicial notice of a written decision that is part of the record in another court).

¶ 9 The court of appeals of Indiana affirmed the dismissal of the Indiana action but disagreed with the superior court's conclusion that the action was barred by a lack of subject matter

jurisdiction or comity considerations. *Miller*, No. 84A05-1003-PL-237, slip op. at 5. The court first noted:

> "In the instant case, there is no dispute that the Illinois court had jurisdiction over the prior action and rendered a final judgment on the merits of that action. There is also no dispute that Osler and Miller were parties to the Illinois action and are parties in the case herein. Consequently, claim preclusion bars Osler's Indiana action against Miller." *Id*. at 6.

The court of appeals went on to affirm the dismissal based on *res judicata*, finding that Osler could have brought its claims in the 2005 action that had been filed in the circuit court of Cook County. *Id*. at 6-7. The court observed:

> "[A]ccording to Osler's Indiana pleading, '[o]n September 27, 2006, [Osler] first learned of the theft, conversion, and unauthorized use of its power[-]point presentations, lecture DVD[s], and lecture notes for medical board review courses by the defendants….' [Citation.] And September 27, 2006, was just over a year after the Illinois court entered the Consent Decree, and about two years before the Illinois court's stated jurisdiction over the decree was set to expire. ***
>
> Having been aware of the newly alleged conversion almost two full years before the expiration of the Illinois court's jurisdiction to enforce the Consent Decree, Osler could well have raised its Indiana claims in the Illinois action. Osler's newly discovered information was within the subject matter of the Consent Decree, which was based, among other things, on Osler's original allegations that Miller had misappropriated Osler's trade secrets. Further, the Illinois court expressly retained jurisdiction over the parties to that action 'for the purpose of enforcing or modifying this Consent Decree and for the purpose of granting such additional relief as may be necessary or appropriate.' [Citation.]" *Miller*, No. 84A05-1003-PL-237, slip op. at 6-7.

¶ 10 In September 2011, Osler filed a complaint in case No. 11 CH 33466 (2011 action).

¶ 11 In November 2011, Osler filed the supplemental complaint to the 2005 action at issue in the present case, identical in substance to the complaint filed in the 2011 action. In it, Osler alleged: while still employed by Osler in 2006, defendants continued to operate continuing medical education businesses under various names including The Canadian Institute for C.M.E. and MD Exam Prep in the state of Indiana; prior to the defendants' cessation of employment with Osler, they removed PowerPoint presentations, lecture DVDs, and lecture notes for medical board review courses from Osler and converted the property for their own use; Osler's property was taken without the knowledge or permission of Osler; Osler's property was used by Nighthawk, The Canadian Institute for C.M.E., and MD Exam Prep without Osler's permission; and Osler learned of the theft, conversion, and unauthorized use of its property on September 27, 2006. Both complaints alleged the same causes of action, including theft, conversion, the unauthorized use of Osler's property, and violation of the consent decree. Ultimately, Osler requested the value of the converted property and the profits realized by defendants in using the converted property as damages.

¶ 12 In April 2012, Miller filed a motion to dismiss Osler's complaint in the 2011 action, alleging that the complaint was duplicative and contained various other deficiencies.

¶ 13 In September 2012, after a hearing, the circuit court granted Miller's motion to dismiss the 2011 complaint, basing its ruling on the insufficient nature of the complaint and the duplicative nature of the action.

¶ 14 In January 2013, Osler filed its first amended supplemental complaint in the instant action which contained the same substantive factual allegations as the supplemental complaint but expanded upon the causes of action, including conversion, trespass to chattels, civil conspiracy, and violation of the consent decree.

¶ 15 In March 2013, Miller filed a motion to dismiss Osler's first amended supplemental complaint pursuant to section 2-619.1 of the Code, or a combined section 2-615 and section 2-619 motion to dismiss. See 735 ILCS 5/2-619.1 (West 2012). Specifically, Miller brought his motion under section 2-615, alleging that Osler's complaint was defective, section 2-619(a)(3), alleging that Osler filed duplicative complaints in the supplemental 2005 action and the 2011 action, and section 2-619(a)(9), alleging Osler's complaint must be barred based on the affirmative defense of *laches*. Specifically, Miller argued that Osler failed to allege in its amended supplemental complaint that Miller was guilty of any acts of deception that delayed Osler's filing of the supplemental 2011 complaint, that Miller did not learn of the alleged violation until after the consent decree had expired, two years after Osler initially learned of the violation, and that because Osler delayed filing suit in the circuit court of Cook County for five years after it learned of the violation, Miller was unable to "secure or locate certain relevant witnesses, documents, web site data, marketing materials, promotional materials and other critical exculpatory evidence which he might have *** used to properly defend himself against these meritless allegations" and he "did not retain or possess copies of whatever [PowerPoint] presentations, lecture DVD's [*sic*], lecture notes, emails and/or correspondence, marketing materials, promotional materials, or website data which might have supported his defense of this claim." In support of the motion, Miller attached, in pertinent part, a personal affidavit in which he stated:

> "3. I have been unable to locate and no longer possess relevant witness information, documents, web site data, marketing materials, promotional materials, [PowerPoint] presentations, lecture DVD's [*sic*], lecture notes, emails and/or correspondence, which I may have generated or that may have existed between September 14, 2005-September 14, 2008.
>
> 4. I thought I was complying with the terms of the Consent Decree after the Court entered its order on August 10, 2006, sanctioning me for a prior violation which occurred in Louisville, Kentucky.
>
> 5. I did not have any notice of the alleged violation on September 27, 2006, until I was served with the Indiana lawsuit sometime between October 2008-December 2008."

¶ 16 In August 2013, we affirmed the circuit court's dismissal of the 2011 action as duplicative. *Osler Institute, Inc. v. Miller*, 2013 IL App (1st) 123053-U.

¶ 17 On October 1, 2013, the circuit court dismissed the section 2-615 portion of Miller's motion to dismiss, finding that Osler's amended supplemental complaint was "both procedurally and substantively sufficient to state a cause of action and adequately apprise defendant of the nature of the claims he is called upon to answer."

¶ 18    On October 15, 2013, Osler filed a memorandum of law in opposition to Miller's section 2-619 motion to dismiss, arguing that the *laches* defense did not apply to Miller. The same day, Osler also filed a motion to strike paragraphs 3, 4, and 5 of Miller's affidavit in support of his section 2-619 motion "on the grounds that the statements made in those paragraphs are conclusory."

¶ 19    On October 22, 2013, Miller filed a reply in support of his section 2-619 motion to dismiss in which he also noted his contention pursuant to section 2-619(a)(3) was moot as the circuit court's dismissal of the 2011 complaint had been affirmed on appeal subsequent to Miller's filing of his motion to dismiss.

¶ 20    On November 12, 2013, in a written order, the circuit court found that Osler's motion to strike was without merit and granted Miller's motion to dismiss based on *laches*.

¶ 21    On appeal, Osler first contends that the trial court erred by dismissing its complaint on the basis of *laches*.

¶ 22    A motion pursuant to section 2-619 challenges a complaint based on certain defects or defenses. 735 ILCS 5/2-619 (West 2012). Section 2-619(a)(9) provides for dismissal of a claim if it is barred by some affirmative matter. 735 ILCS 5/2-619(a)(9) (West 2012). An "affirmative matter" is any defense other than a negation of the essential allegations of the plaintiff's cause of action. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). In reviewing a dismissal pursuant to a section 2-619 motion, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Mo v. Hergan*, 2012 IL App (1st) 113179, ¶ 34. If the defendant satisfies the initial burden of presenting an affirmative matter, the burden then shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Kedzie*, 156 Ill. 2d at 116. "If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed. [Citation.]" (Internal quotation marks omitted.) *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003).

¶ 23    "*Laches* is an equitable principle which bars an action where, because of delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from what the party otherwise would have taken." *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 578 (1997). In order to present a successful defense of *laches*, a defendant must show both that the plaintiff lacked diligence in presenting its claim and the defendant was prejudiced as a result of the delay. *Mo*, 2012 IL App (1st) 113179, ¶ 36. A claim of *laches* will only be considered present where there is:

> " '(1) [C]onduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit[;] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.' " *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 838 (1996) (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 553 (1958)).

The burden is on the defendant to establish *laches* by a preponderance of the evidence. *O'Brien*, 281 Ill. App. 3d at 834. Whether the defense of *laches* is available to a defendant depends on the facts and circumstances of each case. *Nancy's Home of the Stuffed Pizza, Inc. v.*

*Cirrincione*, 144 Ill. App. 3d 934, 941 (1986). In addition, the defense of *laches* is more than a mere delay in asserting a right. *Id.* Rather, the defendant must show prejudice or hardship rather than a mere passage of time. *Id.*

¶ 24 As an initial matter, the parties disagree as to the standard of review. Osler claims that a ruling on a section 2-619 motion to dismiss is reviewed *de novo*, citing *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004), and *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 345 (2010). Miller argues that the standard of review for a decision based upon *laches* is an abuse of discretion, citing *Lozman v. Putnam*, 379 Ill. App. 3d 807 (2008), and *Hannigan v. Hoffmeister*, 240 Ill. App. 3d 1065 (1992). However, the cases that Miller cites are distinguishable. In *Lozman*, the circuit court made the factual determination that the doctrine of *laches* barred the plaintiffs' recovery on certain claims after a full jury trial, rather than applying the doctrine pursuant to a section 2-619 motion to dismiss like in the present case. *Lozman*, 379 Ill. App. 3d at 818-19. *Hannigan* involved a petition for mandamus filed against a government body, not a section 2-619 motion to dismiss in a case between a corporation and an individual. *Hannigan*, 240 Ill. App. 3d at 1074-75. In addition, Illinois case law is clear that the dismissal of a cause pursuant to section 2-619 is reviewed *de novo*. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004); *Michigan Indiana Condominium Ass'n v. Michigan Place, LLC*, 2014 IL App (1st) 123764, ¶ 9; *Ashley v. Pierson*, 339 Ill. App. 3d 733, 737 (2003); see also *Valdovinos v. Tomita*, 394 Ill. App. 3d 14, 18 (2009) (finding that the appellate court "does not give deference to the circuit court's judgment on a motion to dismiss pursuant to section 2-619 but, rather, reviews the matter *de novo*"). Accordingly, we apply a *de novo* standard of review to the circuit court's grant of Miller's 2-619 motion to dismiss on the basis of *laches*.

¶ 25 In the present case, we find the circuit court properly applied the defense of *laches*. First, the record shows that Osler learned of the alleged violation on September 27, 2006, just short of two months after the circuit court had ordered Miller to pay sanctions to Osler, based on Osler's fee petition. However, Osler did not file a claim based on that violation until September 26, 2008, almost two full years after it originally discovered the alleged violation and 12 days after the consent decree expired. Moreover, Osler filed suit in the state of Indiana, despite both having previously filed a petition or rule to show cause and a fee petition for a violation of the consent decree in the circuit court of Cook County and the consent decree's explicit language that the circuit court of Cook County would retain jurisdiction "for the purpose of enforcing or modifying this Consent Decree and for the purpose of granting such additional relief as may be necessary or appropriate." As the circuit court pointed out below:

> "Instead of properly bringing the matter before the court that had entered and retained jurisdiction over the enforcement of the 2005 Consent Decree, [Osler] elected to sit on [its] hands for two years–until after the Consent Decree had expired–before bringing its claims, not in Illinois, but in Indiana. "

Osler has alleged nothing to suggest that Miller somehow caused Osler's delay in filing suit for the almost two years after it discovered the violation. As the supreme court explained, the defendant cannot be "guilty of any affirmative act of deception to prevent suspicion and inquiry." *Pyle*, 12 Ill. 2d at 554. Osler argues that Miller's removal of PowerPoint presentations, lecture DVDs, and lecture notes owned by Osler and converting them for his own use constituted an affirmative act of deception that led to the delay. However, it is undisputed that Osler learned of this second alleged violation of the consent decree on

September 27, 2006. Even assuming Miller removed the PowerPoint presentations, lecture DVDs, and lecture notes owned by Osler and converted them for his own purposes on September 27, 2006, such actions by Miller still would not explain why Osler waited almost two years, until September 26, 2008, to file suit in the state of Indiana. Osler has never offered any explanation for why it waited almost two years to file. We conclude that Osler lacked the required diligence in pursuing the present action.

¶ 26    Moreover, there is no question that Miller suffered prejudice as a result of Osler's delay in filing suit. First, because Osler waited until after the consent decree expired to file suit, Miller was "lulled into doing that which he would not have done *** had the right been properly asserted." (Internal quotation marks omitted.) *O'Brien*, 281 Ill. App. 3d at 839. Miller argued in his motion to dismiss that as a result of the delay he was unable to "secure or locate certain relevant witnesses, documents, web site data, marketing materials, promotional materials and other critical exculpatory evidence which he might have *** used to properly defend himself against these meritless allegations" and he "did not retain or possess copies of whatever [PowerPoint] presentations, lecture DVD's [*sic*], lecture notes, emails and/or correspondence, marketing materials, promotional materials, or website data which might have supported his defense of this claim." This claim is supported by Miller's affidavit, in which he averred that he believed he was in compliance with the consent decree after being sanctioned for the Kentucky violation and that he did not learn of the alleged violation at issue in the present case until he was served with the Indiana lawsuit between October and December 2008. Miller also averred that he was unable to locate and no longer possessed relevant witness information, documents, web site data, marketing materials, promotional materials, PowerPoint presentations, lecture DVDs, lecture notes, emails or correspondence, "which [he] may have generated or that may have existed between September 14, 2005-September 14, 2008." Osler claims that Miller should have maintained "any information relevant to the consent decree until its expiration" and "[p]resumably, Miller would be expected to maintain whatever evidence he possessed during the pendency of the Indiana litigation." However, Osler did not file suit in Indiana until September 26, 2008, 12 days after the consent decree expired, and, according to his affidavit, Miller did not learn of the Indiana suit until October 2008 at the earliest. Osler has not cited to any legal authority to suggest that Miller was required to maintain documentation or information relevant to the consent decree once the consent decree expired. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (the argument section of appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Here, we find it was reasonable for Miller to dispose of any documentation that might have been relevant to the consent decree once the consent decree expired.

¶ 27    In addition, because Osler waited until after the consent decree expired and first filed suit in the state of Indiana, Miller was forced to defend multiple lawsuits in two states over a span of years beginning in 2008, based on an alleged violation of the consent decree that Osler learned of in 2006. As an appellate court, we may affirm on any basis in the record, regardless of whether the circuit court relied on that basis. *Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969, ¶ 17. With this principle in mind, we note that the Indiana Court of Appeals found that essentially the same action that Osler has filed in the present case was barred by *res judicata* because Osler could have filed the action in the circuit court of Cook County but instead chose to file it in the state of Indiana. In doing so, the court noted that Osler learned of the alleged

violation almost two full years before the consent decree was set to expire and the "newly discovered information was within the subject matter of the Consent Decree, which was based *** on Osler's original allegations that Miller had misappropriated Osler's trade secrets. Further, the Illinois court *expressly retained jurisdiction over the parties to that action ***.*" (Emphasis added.) *Miller*, No. 84A05-1003-PL-237, slip op. at 6-7.

¶ 28    Osler claims that it filed suit in Indiana because "virtually" every defendant except for Miller resided in the state of Indiana and the conduct complained of occurred in Indiana or Ontario, Canada. However, as even the Indiana Court of Appeals noted, the circuit court of Cook County had expressly retained jurisdiction over the parties to the consent decree for the purpose of enforcing the consent decree and Osler waited almost two years, until after the consent decree expired, to file suit. Osler further argues that it is unaware of any authority that holds allowing two years to pass after learning of a potential claim before filing suit is an unreasonable delay but the cases on which Osler relies are distinguishable. See *In re Marriage of Tutor*, 2011 IL App (2d) 100187; *McSweeney v. Buti*, 263 Ill. App. 3d 955 (1994).

¶ 29    In *Marriage of Tutor*, the appellate court found that the respondent had forfeited the defense of *laches* because he failed to cite to any page in the record in support of his argument. *Marriage of Tutor*, 2011 IL App (2d) 100187, ¶¶ 30-31. Here, in contrast, Miller has cited to the record in support of his motion to dismiss and also included a supporting affidavit.

¶ 30    In *McSweeney,* the administrator of a deceased partner's estate and the assignees of the proceeds of a portion of the deceased partner's partnership interest sued the surviving partners for a declaratory judgment, an accounting, and damages for the defendants' unilateral sale of the partnership property to themselves. *McSweeney*, 263 Ill. App. 3d at 956. After a trial, the circuit court entered judgment in favor of the plaintiffs and against the defendants. *Id*. at 958. One of the issues on appeal was whether the circuit court erred by not barring the plaintiffs' claim based on the affirmative defense of *laches* where the claim was filed more than two years after the right to the accounting had accrued. *Id*. at 961-62. The appellate court found:

> "[L]*aches* is not apparent on the face of the complaint. The right to maintain an action for accounting had not expired. Additionally, since there was [no] unreasonable delay in bringing an action for relief that prejudiced the rights of the other party, the doctrine of *laches* is not applicable to the case at bar. Therefore, [the plaintiff] is not precluded from maintaining an action for an accounting by reason of the five-year statute of limitations." *Id*. at 962.

We first note that the procedural posture of the present case is completely different than that in *McSweeney*. Here, the defense of *laches* was addressed in a section 2-619(a)(9) motion to dismiss, while in *McSweeney* the court addressed the defense of *laches* in the context of a trial on the issue of liability. *Id*. at 958. Furthermore, the court in *McSweeney* found no other circumstances that would prejudice the defendants as a result of the delay. *Id*. at 962. In the present case, as discussed above, additional circumstances resulted in prejudice to Miller due to Osler's delay.

¶ 31    Finally, we again observe that whether the defense of *laches* is available to a defendant depends on the facts and circumstances of each case. *Cirrincione*, 144 Ill. App. 3d at 941. Under these circumstances, we find that Osler lacked diligence in filing suit and that the delay in filing resulted in significant prejudice to Miller. Accordingly, the circuit court properly granted Miller's motion to dismiss on the basis of *laches*.

¶ 32    Osler next contends that paragraphs three, four, and five of Miller's affidavit in support of his motion to dismiss should have been stricken, alleging they are conclusory and technically deficient. Osler concludes that because Miller's affidavit in support of his motion to dismiss had been stricken, his motion to dismiss should have been denied.

¶ 33    Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) provides:

"Affidavits *** submitted in connection with a motion for involuntary dismissal under section 2-619 of the Code *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

¶ 34    Here, Osler argues that Miller's affidavit was deficient because it was conclusory and because the statements did not set forth with particularity the facts upon which Miller's *laches* defense was based. Paragraph three of Miller's affidavit stated that he no longer possessed relevant witness information, documents, website data, marketing materials, promotional materials, PowerPoint presentations, lecture DVDs, lecture notes, emails or correspondence, "which [he] may have generated or may have existed" during the period of time covered by the consent decree. Paragraph four states that Miller believed he was in compliance with the consent decree after he was sanctioned for the 2006 Kentucky violation. Paragraph five states that Miller did not receive notice of the alleged violation in the present case until he was served with the Indiana lawsuit between October and December 2008. Miller's affidavit establishes that he believed he was in compliance with the consent decree and that he did not receive notice of a violation of the consent decree until at least October 2008, which would explain why he would no longer be in possession of relevant witness information, documents, website data, marketing materials, promotional materials, PowerPoint presentations, lecture DVDs, lecture notes, e-mails, or correspondence that would have existed during the consent decree period. Osler claims that the term "relevant" is an improper legal conclusion and that Miller was required to identify and name each "missing" document, but fails to cite any case law to support its argument. Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) requires that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Failure to support a contention with relevant authority fails to meet this requirement and results in waiver of the argument. *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 53. In addition, we disagree with Osler that "relevant" is an improper legal conclusion. The plain and ordinary meaning of the word "relevant" is either "having significant and demonstrable bearing on the matter at hand" or "affording evidence tending to prove or disprove the matter at issue or under discussion." Merriam-Webster's Collegiate Dictionary 987 (10th ed. 1996). We find Miller's use of the term "relevant" to be perfectly acceptable method of describing how the witness information, documents, website data, marketing materials, promotional materials PowerPoint presentations, lecture DVDs, lecture notes, emails, and correspondence relate to the matter at hand. Osler also argues that "Miller had every reason to maintain these so-called exculpatory documents up to the time he received notice of Osler's claim during October 2008." However, this argument is again unsupported by any legal authority or citation to the record and amounts to a conclusion that fails to meet the

requirements of Illinois Supreme Court Rule 341(h)(7). We find that Miller's affidavit is sufficient to support his argument that he was prejudiced by Osler's delay in filing suit in the state of Indiana until 12 days after the consent decree expired and an additional 3-year delay in filing suit in the circuit court of Cook County, which explicitly retained jurisdiction over the action for the purposes of enforcing the consent decree.

¶ 35      In addition, the cases that Osler does cite are distinguishable from the present case. See *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 402 Ill. App. 3d 513, 524 (2010) (finding that an affidavit was properly stricken where it decided the definition of the term "insured" for the court and it was unclear whether the affiant had personal knowledge of the insurance policy at issue); *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 388 (2009) (holding that the statement that an area was "under control" of the defendants at the time of the accident at issue was a legal conclusion rather than a statement of fact); *Webber v. Armstrong World Industries, Inc.*, 235 Ill. App. 3d 790, 798-99 (1992) (striking down certain averments in an affidavit from the plaintiff's coworker that failed to identify the place and time of exposure to asbestos in a personal injury case based on alleged exposure to asbestos). The cited cases are neither factually similar to the present case nor do they use the same terminology in the affidavits at issue and therefore are inapposite. Accordingly, we find the circuit court properly denied Osler's motion to strike Miller's affidavit and properly relied on Miller's affidavit in support of his motion to dismiss.

¶ 36      For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 37      Affirmed.