2020 IL App (1st) 190634-U

FIRST DISTRICT,
SECOND DIVISION
January 14, 2020

No. 1-19-0634

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DEBORAH J. ECHOLS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 15 CH 9627 |
| LSE ENTERPRISES, INC. and LARRY ROBERTS, | ) | |
| JR., | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Plaintiff's 2015 suit for an accounting was time-barred under the applicable five-year statute of limitations, since the undisputed evidence showed that the business partnership on which her suit was based ended in 2008.

¶ 2    In 2006, plaintiff Deborah Echols and defendant LSE Enterprises, Inc. (per its president, defendant Larry Roberts) jointly opened a barber and beautician college in Chicago. Their agreement provided that LSE would control the day-to-day operations of the college and pay monthly dividends to Echols.

¶ 3          In 2015, Echols brought the present suit, alleging that she had not received any dividend payments since January 1, 2009. She therefore sought an accounting and payment of all amounts owed. The trial court granted summary judgment to defendants, finding that Echols' accounting claim was time-barred. Echols filed a *pro se* appeal, arguing that (1) there are material issues of fact as to when her cause of action accrued and (2) the trial court erred in transferring her case from the Chancery Division to the Law Division. We disagree and affirm the judgment of the trial court.

¶ 4                                              BACKGROUND

¶ 5          LSE is a company that runs Larry's Barber Colleges at various locations in the Chicagoland area. Roberts founded LSE in 2004 and is LSE's president.

¶ 6          In 2006, Echols had a lease for commercial property at 701-709 East 79th Street in Chicago. She approached Roberts about opening a barber and beautician college at that location. On June 23, 2006, LSE and Echols entered into a "Preferred Share Purchase Agreement" to open a "Larry's Barber College and Entourage Beauty College" (the college) together. The contract stated that LSE (the "Seller") would have a 49% interest while Echols (the "Purchaser") would have a 51% interest. (It is unclear whether the parties were referring to ownership interests in the college or in LSE.) The contract further provided that "[a] fixed sum of whatever the two discuss will be payable on closing of this Agreement." LSE agreed to control the day-to-day operation of the college and provide Echols with dividend payments, for which Roberts agreed to be personally liable.

¶ 7          At the time of the parties' agreement, Echols was behind on rent and facing eviction. LSE paid the arrearage and was added to the lease. Echols had already purchased styling stations and chairs for the college (the parties dispute exactly how many) and paid for the

construction of classrooms with electricity and lighting. LSE paid for additional remodeling, including installation of plumbing and an additional restroom, and various equipment. With their combined efforts, the college obtained a cosmetology school license and started operation in November 2006.

¶ 8        The parties dispute what caused their business relationship to go sour. Roberts alleged that Echols never compensated him for her share in the business and also stole money from the business by taking students' tuition for personal use. Sometime in 2008, Roberts told Echols that they "could no longer be in business because she was stealing from the business." According to Roberts, Echols then broke into the beautician college at night and removed all the equipment without Roberts' permission. The next day she told Roberts, "We not in business no more." Later in 2008, the college was evicted for nonpayment of rent. Roberts signed a new lease solely for the half of the property containing the barber college, and he continues to operate a Larry's Barber College at that location to this day.

¶ 9        Roberts admitted that he never paid Echols any dividends, but he asserted that the college never made a profit, "mostly because of the fact [Echols] was taking from the business and didn't allow it to make money."

¶ 10        For her part, Echols admitted not paying any money for her interest in the school, but she alleged that she compensated defendants through the provision of assets (styling equipment and the remodeled premises) and services (enrolling students in the school). She denied taking students' tuition for her own purposes, and she denied agreeing to close the school or leave the business. Rather, she alleged that she tried to operate the beautician college but was prevented from doing so by her own illness and by Roberts' actions.

¶ 11        On June 19, 2015, Echols filed the instant suit, styled as a "Complaint for Accounting," in the Chancery Division of the circuit court. As amended, her complaint alleged that she entered into a contract with Roberts to become a 51% owner of LSE and a partner in the operation of the college and of LSE. In count I, she sought an accounting of LSE's receipts and business transactions, as well as her share of the company's profits. In count II, she sought damages for breach of contract, since defendants failed to pay dividends.

¶ 12        On November 7, 2017, the trial court, apparently on its own motion, entered an order transferring the case to the Law Division. The court explained that "the accounting sought is not an equitable remedy, but instead a remedy at law based on an alleged contract between the parties."

¶ 13        Defendants moved to dismiss both counts of the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). With regard to Echols' accounting claim, they argued it was time-barred under the applicable five-year statute of limitations, since Entourage Beauty College closed on or around November 2008. With regard to her breach of contract claim, defendants argued that the parties' contract was too indefinite to be enforced since no purchase price was stated.

¶ 14        On September 6, 2018, the trial court granted defendants' motion as to the breach of contract claim (a ruling which Echols does not contest on appeal), but denied it as to the accounting claim, since "LSE and Roberts [did] not attach any evidence or affidavit supporting their assertion [that the college closed in 2008], and the court has no basis on which it can determine when Entourage Beauty College dissolved."

¶ 15        Defendants then moved for summary judgment on Echols' accounting claim, again arguing that it was time-barred. In support, they attached an affidavit from Roberts stating that

Entourage Beauty College closed and ceased all business operations in 2008. They also attached Echols' reply to defendants' affirmative defenses, in which she stated: "Plaintiff admits Entourage Beauty College at 701-709 E. 79th Street, Chicago closed in 2008."

¶ 16     On March 1, 2019, the trial court granted defendants' summary judgment motion. It explained that Echols' accounting claim was based on two allegations: an alleged oral agreement that she would take ownership interest in LSE, and an alleged business partnership with Roberts. But the alleged oral agreement took place in 2006, and Echols did not file her complaint until 2015, after the five-year statute of limitations for oral agreements (735 ILCS 5/13-205 (West 2016)) had expired. As for her alleged business partnership with Roberts, the trial court found that Echols had not presented any evidence to create a genuine issue of material fact as to when the partnership was dissolved. Because the undisputed facts showed that Entourage Beauty College closed in 2008, and a right to an accounting based on a business partnership accrues at the time of dissolution, Echols' claim for accounting was time-barred under the five-year statute of limitations for accounting claims (*Santa Claus Industries, Inc. v. First National Bank of Chicago*, 216 Ill. App. 3d. 231, 236 (1991)).

¶ 17                                    ANALYSIS

¶ 18     Echols argues that the trial court's grant of summary judgment for defendants must be reversed because (1) there were material issues of fact as to when the college closed and (2) the trial court erred in transferring her case from the Chancery Division to the Law Division. Although defendants have not filed an appellate brief, the record is sufficiently clear for us to decide this appeal on Echols' brief alone. *Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *State Farm Mutual Insurance Co. v. Ellison*, 354 Ill. App. 3d 387, 388 (2004).

¶ 19        We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016).  To prevail, the nonmoving party must present some evidence that would arguably entitle her to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 20        Echols first argues that summary judgment is inappropriate because there are material issues of fact as to when the college closed.  As the trial court stated, the statute of limitations for accounting claims is five years (*Santa Claus*, 216 Ill. App. 3d at 236), and a partner's right to an accounting accrues when the partnership is dissolved (*McSweeney v. Buti*, 263 Ill. App. 3d 955, 962 (1994)).  The trial court found that Entourage Beauty College closed and the partnership dissolved in 2008, more than five years before Echols filed her complaint on June 19, 2015.  Echols argues that a material issue of fact exists as to when the college closed, and she specifically claims that Entourage Beauty College remained open until September 30, 2010.  In support, she cites her response to defendants' motion to dismiss, to which she attached a screenshot from the website of the Illinois Department of Financial and Professional Regulation reflecting that Entourage Beauty College's cosmetology school license expired on that date.

¶ 21        However, the trial court correctly observed in ruling on defendants' motion to dismiss that "the termination of this license does not necessarily show that Entourage Beauty College dissolved on September 30, 2010."  Significantly, in Echols' reply to defendants' affirmative defenses, she admitted that Entourage Beauty College closed in 2008.  She also admitted as much in an affidavit on August 17, 2017.  Echols' admissions are corroborated by Roberts' affidavit and his deposition, in which he testified that the college opened in 2006 and operated

for around two years, until in 2008 Echols removed all the equipment from the beautician college, thus rendering it inoperable, and the college was evicted from the premises. Nor did either party present any evidence that the beautician college was open for business at any time past 2008. Thus, the trial court did not err in finding that, under the undisputed facts, Echols' claim for an accounting of the business partnership was time-barred.

¶ 22  Echols next argues that the trial court erred in transferring her case from the Chancery Division to the Law Division. She concedes that the written contract between the parties was unenforceable but alleges the case should have stayed in the Chancery Division in order for her to obtain equitable relief based on "the undisputed investment and expectation from the business venture."

¶ 23  Transferring a case to another division is within the sound discretion of the trial court. *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 266 Ill. App. 3d 1037, 1049 (1994). Here, Echols presents no case law or other legal authority in support of her contention that the transfer was an abuse of discretion. Accordingly, she has forfeited this point. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 24  Furthermore, as we recognized in *Kaplan v. Keith*, 60 Ill. App. 3d 804, 809 (1978):

"Since jurisdiction over [a] cause of action [is] vested generally in the circuit courts, which are organized and divided for administrative convenience, the transfer of [an] equitable cause of action from the Chancery Division to the Law Division does not limit the remedy available to one at law. Equitable relief is available even though the case is in the Law Division. No error resulted from the transfer of the plaintiffs' claim."

Just as we held that no error resulted from the transfer of plaintiffs' claim from the Chancery Division to the Law Division in *Kaplan*, no error resulted from the transfer of Echols' claim from the Chancery Division to the Law Division in this case.

¶ 25 Echols additionally argues that the trial court erred by "keeping [the] matter on Chancery call for 2 years" before transferring the case, implying that the trial court's delay in transferring the case caused the statute of limitations on her claim to expire. However, the statute of limitations had already expired when Echols filed her initial complaint in the Chancery Division on June 19, 2015. See 735 ILCS 5/13-205 (West 2016); *Santa Claus*, 216 Ill. App. 3d at 236.

¶ 26                                                CONCLUSION

¶ 27 For the foregoing reasons, the trial court's grant of summary judgment in favor of defendants is affirmed.

¶ 28 Affirmed.